UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-cr-10431-WGY |
| ) | |
| KEYSI BATISTA, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant distributed fentanyl to an FBI confidential informant while on supervision for a pending drug distribution case in the Essex County Superior Court for distribution of heroin and cocaine. The defendant's conduct not only reflects his involvement in the distribution of a deadly substance, but also his disregard for court supervision and the law. A significant sentence is therefore necessary and warranted both to punish this defendant and to protect the community from the defendant's recidivist behavior.

Given the facts of this case and the defendant's background and involvement, the government recommends that the court sentence the defendant to the low-end of the guideline sentencing range, 188 months of imprisonment, four years of supervised release, and a $200 special assessment. There is no plea agreement in this case.

    **I.    ADVISORY SENTENCING GUIDELINES**

The government agrees with the PSR's calculations of the defendant's offense level and criminal history category. The defendant is responsible for distributing 101 grams of fentanyl. PSR ¶ 15. The guideline calculations are, however, controlled by the defendant's career offender status. PSR ¶ 21. His offense level begins at 34. *Id*. Even without his career offender status, the

defendant's base offense level would be 24. PSR ¶ 15. The defendant is entitled to a three-level acceptance of responsibility reduction, PSR ¶ 22-23.  The defendant's total offense level is 31. PSR ¶ 24.  The defendant's career offender status results in a criminal history category of VI. PSR ¶ 33. Even without consideration of his career offender status, the defendant's criminal history would result in a criminal history category IV. PSR ¶ 32. Based upon a total offense level of 31 and a criminal history category VI, the advisory guideline range is 188-235 months. PSR ¶ 63. Further, there is a 60-month mandatory minimum term of imprisonment in this case. PSR ¶ 62.

> **II.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

Consideration of the § 3553(a) factors demonstrates that a sentence of 188 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

> **A.     Nature of the Offense**

The defendant was dealing fentanyl while under indictment in the Essex County Superior Court for distributing heroin and cocaine. PSR ¶ 6, 29. The defendant's first distribution to the FBI confidential informant ("CI") was on August 10, 2017, while on conditions of release in the Essex County Superior Court. The defendant was then sentenced days later in the Essex County Superior Court on August 21, 2017 and served the balance of his sentence until his release in December 21, 2017. PSR ¶ 29. Within the year, the defendant again re-connected with the FBI CI and sold fentanyl to the CI on November 2, 2018. PSR ¶ 8.

Between November 2, 2018 until the defendant's arrest on November 15, 2019, the FBI CI was utilized to identify and make controlled purchases from other drug distributors. In order to preserve the utility of the CI, the defendant Batista was not arrested immediately after the November 2, 2018 controlled purchase.  Upon the defendant's arrest in November 2019,

2

however, FBI agents discovered evidence that he was still involved in drug distribution. PSR ¶ 9. Upon arresting the defendant at his home, the defendant admitted to having cutting agents for drugs in the kitchen. In the oven, FBI agents seized a brown powdery substance. Upon a further search, pursuant to a warrant, agents seized drug processing tools and a substance that presumptively tested positive for cocaine. The government agrees with the PSR that this substance is not attributed to the defendant for the purposes of the guideline calculation. The evidence discovered in the defendant's apartment, however, indicates that the defendant had not left his drug dealing behind despite two state superior convictions and being on probation for drug distribution. PSR ¶ 29.

Here, the defendant was dealing in fentanyl, a deadly drug that has created havoc in the United States, and more specifically in Massachusetts, over the past several years. Fentanyl is an extremely potent synthetic opioid that has become increasingly intertwined with and/or replaced heroin, both literally as an additive to make heroin more potent and in terms of the marketplace.[1] This case tracks with the above trend because in 2015 the defendant was dealing in heroin. By 2017, when he first sold to the FBI CI, he was dealing in heroin's synthetic and more dangerous form, fentanyl.

Massachusetts has been one of the states hardest hit by the opioid crisis, and has been among the top states with the highest rates of fentanyl-related overdose deaths.[2] In 2018, Massachusetts had an opioid-related overdose death rate of 29.3 deaths per 100,000 persons, one

---

[1] U.S. Department of Justice Drug Enforcement Administration, *2019 National Drug Threat Assessment*, *available at* https://www.dea.gov/sites/default/files/2020-01/2019-NDTA-final-01-14-2020_Low_Web-DIR-007-20_2019.pdf, at 12 (last visited December 4, 2020) (hereinafter "DEA 2019 Assessment").

[2] DEA 2019 Assessment at 13-14.

of the highest rates in the nation.[3]  While the increased availability of naloxone (also known as Narcan) has had a positive impact in lowering the number of overdose deaths in Massachusetts in 2019, there were still 1,952 confirmed opioid-related overdose deaths in Massachusetts and the Department of Public Health estimates that there will be an additional 61 to 64 deaths confirmed for the year once all analysis is complete.[4]  For 2020, the final figures are still being compiled.  While overdose death rates are stabilizing in Massachusetts, they remain at a tragic peak, attributable to the increasing availability of fentanyl in the past decade. Based upon the 2019 data available, of the 1,873 individuals whose deaths were determined to be opioid–related and a toxicology screen was performed, 1,752 (94%) had a positive result for fentanyl.[5]  These statistics are not hypothetical: they describe the opioid epidemic occurring right now in this District.  The epidemic is real and being felt every day by families across Massachusetts and New England.

### B.   Characteristics of the Defendant

The defendant has a significant, repeat criminal history. The defendant was first indicted in state superior court for distribution of heroin and cocaine after an arrest on May 8. 2012. PSR ¶ 27. For that case he was sentenced to two and a half years of imprisonment with one year to

---

[3] National Institute on Drug Abuse, *Opioid-Related Overdose Deaths* (Revised April 2020), *available at* https://www.drugabuse.gov/drug-topics/opioids/opioid-summaries-by-state (last visited on December 4, 2020).

[4] Massachusetts Department of Public Health, *Data Brief: Opioid-Related Overdose Deaths Among Massachusetts Residents* (June 2020), *available at* https://www.mass.gov/doc/opioid-related-overdose-deaths-among-ma-residents-june-2020 (last visited December 4, 2020).

[5] *Id.*

serve. By August 6, 2014, the defendant violated his probation in that case. *Id*. The following year, on July 23, 2015, while still on probation for his 2012 case, he was arrested again for distributing heroin and cocaine. PSR ¶ 29. As stated above, while that 2015 case was pending, he sold fentanyl to the FBI CI. From 2012 until 2019, the defendant has been court-involved with some form of drug distribution and has not relented from his drug dealing even while under court supervision.

The government recognizes the United States Sentencing Commission, in its report *Federal Sentencing for Career Offenders*, notes that career offenders qualifying on the basis of drug trafficking offenses alone are at a lower risk of recidivism.[6] Here, the defendant has defied that data, his past criminal history evidences his propensity towards recidivism. The defendant's offenses and criminal history, therefore, warrant a significant sentence to adequately protect the public and punish his disregard for court supervision and the law.

    **C.**    **Specific and General Deterrence**

A significant sentence of imprisonment is warranted to deter others from becoming involved in fentanyl dealing. The dangers of fentanyl dealing are difficult to overstate given the tragic rate of overdose deaths involving fentanyl. Individuals tempted to engage in fentanyl trafficking must understand that *any* involvement will have immediate and harsh consequences. Imprisonment is necessary to send a strong warning to others who might otherwise consider profiting from drug dealing that the money is not worth the punishment. Further, general deterrence must be considered for any other individuals similar to the defendant's status, that repeat drug distribution offenses will not be overlooked.

---

[6] 2016 Report to the Congress: Career Offender Enhancements | United States Sentencing Commission (ussc.gov) (July 2016) (last accessed December 4, 2020).

Considerations of specific deterrence also support imposition of substantial period of incarceration. The defendant was no stranger to the penalties associated with drug distribution. Yet, he continued to re-offend. The sentence recommended by the government should be sufficient to deter the defendant from resuming a life of drug dealing and demonstrate that his recidivist behavior is not tolerable.

### III.    CONCLUSION

The government's sentencing recommendation takes into account the various factors set forth in § 3553(a) and the sentencing guidelines.  The United States recommends that the Court sentence the defendant to 188 months in prison to be followed by four years of supervised release, and that the defendant be ordered to pay a mandatory special assessment of $200.

    Respectfully submitted,

    ANDREW E. LELLING
    United States Attorney

By:    */s/ Philip Cheng*
    Philip C. Cheng
    Assistant U.S. Attorney
    1 Courthouse Way, Suite 9200
    Boston, MA  02210
    (617) 748-3101

Dated:  December 4, 2020

CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and copies will be sent to those indicated as non-registered participants.

                                        */s/ Philip Cheng*
                                        Philip C. Cheng
                                        Assistant United States Attorney

Date:  December 4, 2020